UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAMANTHA DIANE BALL,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 16-cv-05351 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 9, 10, 11).

After considering and reviewing the record, the Court concludes that the ALJ did not commit any harmful legal error and that the ALJ's findings and conclusions regarding the Social Security applications discussed herein are based on substantial evidence in the

ORDER ON PLAINTIFF'S COMPLAINT - 1

record as a whole. Instead of relying on the one-time examination from Dr. Covell, the ALJ instead gave great weight to the opinion of plaintiff's treating physician, Dr. Kallock, who opined that plaintiff could work and is not disabled. The ALJ's findings that the opinion from Dr. Covell was based on findings inconsistent with the longitudinal treatment record, which the ALJ discussed at length, and that Dr. Covell's opinion was inconsistent with specific findings discussed by the ALJ, is based on substantial evidence in the record as a whole and entails specific and legitimate rationale for failing to credit fully the opinion from Dr. Covell.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, SAMANTHA DIANE BALL, was born in 1983 and was 27 years old on the alleged date of disability onset of December 31, 2010 (*see* AR. 183-89, 190-91). Plaintiff graduated from high school and had "a little bit of college" (AR. 929). Plaintiff has work experience as a caregiver in senior living facilities, in sales and in a warehouse (AR. 253-64).

As noted by the ALJ, plaintiff provided inconsistent reasons as to why she quit working in April 2011 (*see* AR. 880). At her first hearing, as summarized by the ALJ, on March 8, 2013, she reported that she quit "because she could not psychologically handle interacting with other people"; on June 6, 2011, she reported that "she quit working because of her knee pain and an open Labor and Industries' claim;" and, "on October 17, 2011, she reported that she was fired because of her fibromyalgia" (*id*. (citing AR. 39 ("couldn't work with other people very well . . . . had problems lifting the clients that

I needed to lift; [] had problems talking with them because I'm so used to being by myself . . . . have a bad problem with I guess listening to or doing what management wants, following directions"), 455 (quit "because of her knee/L&I issues"), 519 ("I tried to resign from it, but they said they fired me" because she was missing work "due both to recurring flares of fibromyalgia and anxiety and depression . . . .")))

According to the ALJ, plaintiff has at least the severe impairments of "fibromyalgia, migraines, bilateral carpal tunnel syndrome, status post left release March 2014, patellofemoral pain syndrome, thoracic outlet syndrome, anxiety disorder, depressive disorder, obsessive compulsive disorder, opioid dependence on daily methadone treatment, and cannabis abuse (20 CFR 404.1520(c) and 416.920(c))" (AR. 875).

At the time of the hearing, plaintiff was living in a house with three of her four children (AR. 928-29).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 61-72, 73-84, 87-100, 101-14).

Plaintiff's first hearing resulted in an unfavorable decision (*see* AR. 1-6, 8-28). Plaintiff filed an action in this court which resulted in a remand to the Administration for further proceedings (*see* AR. 951-61).

Plaintiff's second requested hearing was held before Administrative Law Judge Cynthia D. Rosa ("the ALJ") on September 30, 2015 (*see* AR. 924-41). On February 29, 2016, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 873-90).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) The ALJ erred in rejecting the medical opinions of Dr. Christmas Covell PhD; and (2) The ALJ's errors were not harmless (*see* Dkt. 9, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Did the ALJ err in rejecting the medical opinions of examining doctor, Dr. Christmas Covell Ph.D.?**

Plaintiff contends that the ALJ erred by failing to credit fully the opinion from examining doctor, Dr. Covell. Defendant contends that this medical opinion is contradicted by other medical opinions, including the opinion from plaintiff's treating doctor, and that there is no error.

First, the Court notes that plaintiff's first argument is that "the ALJ mischaracterized Dr. Covell's opinion concerning [plaintiff's] ability to perform simple

work" (Dkt. 9, p. 3). Plaintiff contends that "Dr. Covell actually opined that [plaintiff's] ability to perform simple work was compromised by 'periodic significant difficulty due to lapses in concentration and persistent ruminations/preoccupation related to obsessive thinking patterns, and various fears and anxiety" (*id*. (citing AR. 524)). However, Dr. Covell actually opined that plaintiff "may experience" such periodic difficulty (AR. 524). This opinion is equivocal and not conclusive. According to the Ninth Circuit, when "medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are function solely of the [Administration]." *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982)). Here, the ALJ resolved the conflicts in the medical evidence by relying on the opinion of plaintiff's treating physician.

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings."

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). That is what the ALJ did here.

Dr. Covell performed an examination of plaintiff on October 17, 2011 (AR. 517-26). She performed a mental status examination ("MSE"). For example, Dr. Covell noted that plaintiff was able to complete serial threes accurately "(albeit slowly), though struggled to spell a simple word backward ("DLROD") after doing so correctly forward" (AR. 522). However, Dr. Covell opined that plaintiff's "[a]ttention appeared grossly intact, as she was able to track changes in the topic of conversation" (*id.*). Dr. Covell included in her medical source statement the following assessment: "Taken together, [plaintiff's] compulsive behaviors, experience of panic attacks, fear of leaving her home, avoidance of others and periodic or marked withdraw, as well as fatigue and low motivation, are likely to substantially impact her attendance, pace, and her ability to persist through a typical work week" (AR. 524).

The ALJ noted that Dr. Covell examined plaintiff only once, and the ALJ indicated that she relied instead on the opinion from plaintiff's treating physician, Dr. Erin Kallock, M.D. (AR. 886; *see also* AR. 885). The ALJ gave "great weight to [plaintiff's] treating physician, Dr. Kallock, who has opined [that] [plaintiff] [should] work and is not disabled" (AR. 885; *see also* AR. 1172 (plaintiff wanted Dr. Kallock to fill out welfare forms and admitted "the forms say disability on them but [plaintiff] insists she isn't trying to apply for disability; she knows that I think this is counter to a good health plan for her"); AR. 1218 ("I believe working/keeping regular routine is actually beneficial in fibromyalgia so I would not be inclined to continue disability for this

indication")). This is in line with the standards regarding the weight that generally is given to treating physicians versus examining doctors. In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). However, plaintiff's assertion is correct that the ALJ still must provide specific and legitimate reasons based on substantial evidence in the record as a whole for doing so.

The ALJ offered numerous reasons for her failure to credit fully the opinion from examining doctor, Dr. Covell (*see* AR. 85-87)). As discussed below, the Court concludes that the ALJ provided "specific and legitimate reasons that are supported by substantial evidence in the record" for her failure to credit fully the opinions from examining doctor, Dr. Covell. *See Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043; *Murray*, 722 F.2d at 502). The ALJ did this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citing *Magallanes*, 881 F.2d at 751).

In resolving the conflict between the medical opinions of plaintiff's treating physician and the one-time examining doctor, Dr. Covell, the ALJ provided a very detailed summary of the treatment notes from Dr. Kallock, plaintiff's treating physician, as well as the rest of the treatment record (*see* AR. 881, 883, 884-885; *see generally*, AR. 876-80). For example, the ALJ noted that in "the summer of 2012, Erin Kallock, M.D., advised [plaintiff] that she believed 'working/keeping a regular schedule is actually beneficial in fibromyalgia so I would not be inclined to continue disability for this

indication'" (AR. 881 (citing AR. 735)). The ALJ, in the same paragraph, noted that when plaintiff saw her medical providers "at Tacoma Family Medicine on July 18, 2011, she rated her pain at zero on a scale of 0 to 10" (*id.* (citing AR. 499)). The ALJ, in her discussion from the treatment records from Dr. Kallock noted that on June 19, 2014, although plaintiff continued to report pain, on her evaluation, plaintiff "was noted to hop from exam bench to ground" (AR. 884 (citing AR. 1348)).

Also from the treatment records of Dr. Kallock, as well as other providers, the ALJ noted that plaintiff "has endorsed near constant, vigorous cleaning, and has also reported running errands (AR. 882; *see also* AR. 766 ("Continues to do aggressive housework daily . . . ."), 577 ("Recently she went sledding, ran errands, her body and mind felt improvement and she would like to begin increasing going out, she believes this to be beneficial")). Regarding plaintiff's depression, the ALJ noted that on "July 2, 2014, [plaintiff] reported to Dr. Kallock that she felt her depression symptoms were improved overall" (AR. 885 (citing AR. 1361)). The ALJ noted that on January 26, 2015, as well as on other occasions, Dr. Kallock opined that plaintiff demonstrated "appropriate affect in behavior, [and] normal speech" (AR. 885 (citing AR. 1377)).

It is clear from the record that Dr. Covell's opinion regarding limitations on plaintiff's ability with respect to attendance, pace, and her ability to persist in a typical work week was based on plaintiff's "compulsive behaviors, experience of panic attacks, fear of leaving her home, avoidance of others and periodic or marked withdraw, as well as fatigue and low motivation . . . ." (AR. 86 (citing AR. 524)). However, in contrast, the ALJ noted various aspects of the record that contradict these findings that were relied

on by Dr. Covell, and the ALJ found that "the longitudinal view of [plaintiff's] signs, symptoms and laboratory findings is more persuasive, in view of [plaintiff] presentation at examinations with her treating providers, as well as her ability to make and attend appointments on a regular basis, and, most significantly, her treating physician's opinion that she should work (as well as exercise, and work on reducing her use of medications)" (AR. 886 (citations omitted)). The ALJ's finding that the aspects of plaintiff's signs and symptoms that were relied on by Dr. Covell when providing her opinion were inconsistent with the signs and symptoms experienced by plaintiff as presented in the longitudinal evidence is based on substantial evidence in the record as a whole.

In contrast to Dr. Covell's reliance on plaintiff's "various fears and anxiety" (*see* AR. 524), the ALJ noted that plaintiff's treating physician indicated that on November 9, 2013, plaintiff was "smiling and laughing," which the treating doctor noted was "usual for her" (AR. 886 (citing AR. 1211, 1227)). Although plaintiff contends that the ALJ was "cherry picking" by referring to plaintiff's "smiling and laughing," it actually is plaintiff's treating physician who indicated that this behavior and affect were "usual for her" (on November 9, 2013: AR. 1211 ("Smiling and laughing during this [appointment] as usual for her"; *see also* AR. 1227 (on December 4, 2013: "appears physically to be in state of usual health, communicative, laughing with me").

As already noted above, in contrast to Dr. Covell's reliance on plaintiff's fear of leaving her home, the ALJ cited treatment records during which plaintiff reported going sledding and running errands (AR. 882; *see also* AR. 577) and also noted that on September 18, 2014, plaintiff "reported that she was walking daily sometimes with a

1  friend and her baby in a stroller" (AR. 887 (citing AR. 1517)). The ALJ also noted that
2  on November 26 2015, plaintiff "complained her medication was causing her to sweat
3  which necessitated taking a towel with her 'everywhere' she went" (AR. 887 (citing AR.
4  1375)). The ALJ noted that if plaintiff "only stayed home, her report of sweating should
5  not be the embarrassment that [plaintiff] reported it to be" (*id.; see also* AR. 1375
6  (plaintiff reported "hyperhydrosis -- mostly face/neck; mostly sweats then gets wet
7  enough that gets cold . . . . Embarrassing; brings towel everywhere")). In the ALJ's
8  discussion of the record as a whole, the ALJ noted that despite plaintiff's allegation "that
9  she is too overcome with anxiety to go anywhere," the record reflects that plaintiff
10 reported going to California in May 2011; traveling to Spokane to see a sick relative in
11 July 2011; going sledding in March 2012; and reporting that she used to attend church on
12 Saturday nights, but only stopped attending because they no longer had a car (AR. 80).
13 Regarding both plaintiff's alleged inability to leave the house and relevant to Dr. Covell's
14 opinion based on this as well as on her opinion regarding plaintiff's alleged difficulties
15 with attendance, the ALJ noted that plaintiff "was able to make and attend methadone
16 appointments on a daily basis for years" (AR. 886 (citing AR. 805-69, 1479-1521)).
17
18         Similarly, in contrast to Dr. Covell's reliance on plaintiff's fatigue, the ALJ noted
19 multiple times in her written decision plaintiff's "near constant, vigorous cleaning . . .
20 ." (*see, e.g.*, AR. 882; *see also* AR. 766 ("Continues to do aggressive housework daily . .
21 . .")). The ALJ also noted that plaintiff was caring for three children, including one born
22 during the relevant period of time.

ORDER ON PLAINTIFF'S COMPLAINT - 10

Likewise, in contrast to the reliance by Dr. Covell on plaintiff's "avoidance of others," the ALJ noted plaintiff's report on May 28, 2015, "to Dr. Kallock that she took a friend's medication" (AR. 887 (citing AR. 1395)). The ALJ found that this report by plaintiff indicated "that she spent enough time with this friend to be close enough to 'borrow' medication" (*id.*). This is a logical inference based on the record. *See Sample, supra*, 694 F.2d at 642 (citing *Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)) (the ALJ may "draw inferences logically flowing from the evidence"). Previously in her written discussion, the ALJ had noted that plaintiff testified "that she had a lot of yard sales in 2012" (AR. 881). The ALJ noted that although plaintiff "stated she stayed in the house because she did not want to talk to people," plaintiff indicated that she was having yard sales almost every weekend and had testified "that she met her boyfriend when she was having yard sale, so it appears that she had been doing the sales herself" (*id.*). This, too, is a logical inference based on the record, and is inconsistent with Dr. Covell's reliance on plaintiff's "avoidance of others" (AR. 886). *See Sample, supra*, 694 F.2d at 642 (citing *Beane*, 457 F.2d 758; *Wade*, 509 F. Supp. at 20) (the ALJ may "draw inferences logically flowing from the evidence").

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's finding that the opinion from Dr. Covell is inconsistent with "the longitudinal view of [plaintiff's] signs, symptoms and laboratory findings," and "was in contrast to her presentation at examinations and follow-up appointments with her treating physician where [plaintiff] was described as 'smiling and laughing' during an appointment, which was 'usual for her'" is a finding based on substantial evidence in the record as a whole

1  (AR. 886 (citations omitted)). The Court also concludes that the inconsistency between

2  plaintiff's longitudinal record and her presentation at appointments with her treating

3  physician, and Dr. Covell's opinions and the bases for Dr. Covell's opinions, is a specific

4  and legitimate reason based on substantial evidence in the record as a whole for the

5  ALJ's failure to credit fully the opinions of Dr. Covell. This is especially the case here,

6  because the ALJ gave great weight to the opinion of plaintiff's treating physician, which

7  is supported by years of treatment records and which conflicted with the opinion from Dr.

8  Covell. The Court finds no error.

   (2)   **If the ALJ erred, were the ALJ's errors harmless?**

   Because the Court concludes that the ALJ did not commit any error, this last contention need not be discussed.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 7th day of November, 2016.

_____
J. Richard Creatura
United States Magistrate Judge